UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA
PITTSBURGH DIVISION

| | |
|---|---|
| **Associated Builders & Contractors of Western Pennsylvania**; **Hampton Mechanical Inc.**, **Lawrence Plumbing LLC**, and **R.A. Glancy & Sons Inc.**, as individuals and on behalf of others similarly situated; **Robert L. Casteel**; **Anthony Scarpine**, as individuals and on behalf of others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> **Plum Borough**; **Pittsburgh Regional Building Trades Council**, <br><br> Defendants. | Case No. 2:20-cv-1933 |

## COMPLAINT—CLASS ACTION

The plaintiffs bring this class action to enjoin Plum Borough from enforcing its "project labor agreement" with the Pittsburgh Regional Building Trades Council, and to recover classwide damages on behalf of contractors and workers who have been injured by this exclusionary and anti-competitive agreement.

The borough's "project labor agreement" disqualifies businesses from receiving contracts or subcontracts for construction work unless they recognize a union affiliated with the Pittsburgh Regional Building Trades Council as the exclusive representative of their employees—even if the contractor's employees have chosen not to unionize, and even if the contractor's employees have chosen a different union to represent them. It also compels the borough's contractors and subcontractors to use employees referred by those unions on construction work performed for the borough.

This effectively precludes non-union craftsmen from performing work on the borough's construction projects unless they join, pay, or associate with a union that belongs to the Pittsburgh Regional Building Trades Council. Finally, the borough's project labor agreement compels its contractors and subcontractors to contribute to an affiliated union's pension and health-care funds and operate in accordance with that union's work rules and employment procedures.

The borough imposes this "project labor agreement" on each of its construction projects, and it imposes these requirements on every contractor and subcontractor engaged in on-site construction work. *See* Project Labor Agreement Between Plum Borough the Pittsburgh Regional Building Trades Council (attached as Exhibit 1).

The borough's project labor agreement violates the rights of contractors and their employees under the First and Fourteenth Amendments and the National Labor Relations Act. It also violates the federal antitrust laws and state competitive-bidding laws. The plaintiffs sue on behalf of every non-union contractor and non-union employee who wishes to work on the borough's construction projects, and they seek damages as well as declaratory and injunctive relief against the continued enforcement of the borough's project labor agreement.

## JURISDICTION AND VENUE

1.   The Court has subject-matter jurisdiction under 28 U.S.C. § 1331, 28 U.S.C. § 1343, and 28 U.S.C. § 1367.

2.   Venue is proper because a substantial part of the events giving rise to the claims occurred in this judicial district. *See* 28 U.S.C. § 1391(b)(2).

3.   Assignment to the Pittsburgh Division is proper because Plum Borough is located within that division. *See* Local Civil Rule 3. In addition, the plaintiffs' claims against the defendants arose in this division. *See id.*

## PARTIES

4.   Plaintiff Associated Builders & Contractors of Western Pennsylvania (ABC) is a membership organization of contractors who operate in western Pennsylvania. Its offices are located at 2360 Venture Drive, Gibsonia, Pennsylvania 15044.

5.   Plaintiff Hampton Mechanical Inc. is a corporation that performs HVAC and sheet-metal contracting work in western Pennsylvania. Its offices are located at 4720 Highpoint Drive, Gibsonia, Pennsylvania 15044. Hampton Mechanical is a member of ABC. Hampton Mechanical sues on behalf of itself and as a class representative.

6.   Plaintiff Lawrence Plumbing LLC is a corporation that performs plumbing work in western Pennsylvania. Its offices are located at 1133 Industrial Park Road, Vandergrift, Pennsylvania 15690. Lawrence Plumbing is a member of ABC. Lawrence Plumbing sues on behalf of itself and as a class representative.

7.   Plaintiff R.A. Glancy & Sons Inc. is a corporation that performs general contracting work in western Pennsylvania. Its offices are located at 2361 Venture Drive, Gibsonia, Pennsylvania 15044. R.A. Glancy & Sons is a member of ABC. R.A. Glancy & Sons sues on behalf of itself and as a class representative.

8.   Plaintiff Robert L. Casteel is a craftsman employed by R.A. Glancy & Sons. Mr. Casteel resides in Plum Borough and pays taxes to Plum Borough. Mr. Casteel sues on behalf of himself and as a class representative.

9.   Plaintiff Anthony Scarpine is a craftsman employed by Hampton Mechanical. Mr. Scarpine resides in Plum Borough and pays taxes to Plum Borough. Mr. Scarpine sues on behalf of himself and as a class representative.

10.   Defendant Plum Borough is a political subdivision of the Commonwealth of Pennsylvania. It may be served at 4575 New Texas Road, Pittsburgh, PA 15239.

11.   Defendant Pittsburgh Regional Building Trades Council is an organization comprising over 33 local unions from 19 different craft sectors. The Council may be served at 1231 Banksville Road, Pittsburgh, Pennsylvania 15216.

## FACTS

12.   A project labor agreement (PLA) is a mandatory union collective-bargaining agreement that all contractors must sign to work on a public-works construction project.

13.   A project labor agreement will often force participating contractors to: (a) recognize certain unions as the exclusive representative of their employees; (b) require that their employees who work on a public-works construction project become dues-paying members of those unions as a condition of their continued employment; (c) contribute to the union's pension and healthcare funds; (d) operate according to the union's work rules; and (e) follow the union's procedures for hiring, firing, and disciplining employees who perform construction work on a public-works project. Some project labor agreements may be less restrictive and impose only some of these requirements on participating contractors.

14.   Twenty-five (25) states ban the use of project labor agreements.[1]

15.   Plum Borough has entered into a project labor agreement with the Pittsburgh Regional Building Trades Council.

16.   This project labor agreement applies to the borough's "onsite construction work." *See* Project Labor Agreement Between Plum Borough the Pittsburgh Regional Building Trades Council, article IV, section 1 (attached as Exhibit 1)

17.   The borough has been imposing this project labor agreement on the onsite construction work that it provides to contractors, and it will continue imposing this PLA on its future onsite construction work unless it is enjoined from doing so.

18.   Only contractors (and subcontractors) who agree to the terms of the project labor agreement with the Pittsburgh Regional Building Trades Council are eligible to

---

1.   The States that ban PLAs are: Alabama, Arkansas, Idaho, Iowa, Florida, Georgia, Kentucky, Louisiana, Mississippi, Missouri, Michigan, Montana, Nevada, New Mexico, North Carolina, North Dakota, Nebraska, Oklahoma, South Carolina, South Dakota, Tennessee, Utah, Virginia, West Virginia, and Wisconsin.

perform construction work for the borough. *See id*. at article I, section 1, ¶ 2 ("[A]ll construction work covered by this Agreement on the Project shall be contracted exclusively to Contractors who agree to execute and be bound by the terms of this Agreement.").

19.   The borough's project labor agreement compels these contractors and subcontractors to recognize a union that belongs to the Pittsburgh Regional Building Trades Council as the "sole and exclusive bargaining representatives of all craft employees within their respective jurisdictions working on the Project." *See id*. article VI, section 1.

20.   The borough's project labor agreement also requires contractors and subcontractors to hire their employees through the unions' job-referral system. *See id*. at article VI, section 3 ("For Local Unions having a job referral system, each Contractor agrees to comply with such system, and the referral system shall be used exclusively by such Contractor."); *id*. at article VI, section 4 ("In the event that a signatory Local Union does not have a job referral system as set forth in Section 3 above, the Contractor shall give the Union forty-eight (48) hours to refer applicants.").

21.   This effectively precludes non-union workers—or workers who belong to unions other than those affiliated with the Pittsburgh Regional Building Trades Council—from performing onsite construction work for the borough. And it compels workers to join, pay, or associate with a union belonging to the Pittsburgh Regional Building Trades Council as a condition of employment related to the borough's onsite construction work.

22.   The project labor agreement contains a narrow exception to its requirement that contractors hire their employees through the unions' job-referral system. In article VI, section 9, the project labor agreement establishes the following exception for "core employees":

To provide opportunities to participate on the Project to minority and women owned business enterprises as well as other enterprises which do not have a relationship with the Unions signatory to this Agreement and to ensure that such enterprises will have an opportunity to employ their "core" employees on this Projec[t], the parties agree that any such enterprise has the right to select core employees whom it will employ on site, in accordance with the formula below and who:

(a) possess any license required by the county, state, or federal law for the Project work to be performed;

(b) have worked a total of at least 1,200 hours per year in the construction craft during each of the prior 3 years, including having participated in an apprenticeship program that has been certified by the state;

(c) were on the contractor's active payroll for at least 60 out of the 180 calendar days prior to the contract award;

(d) have the ability to perform safely the basic functions of the applicable trade.

Only the first and third employee, or up to 10 percent of all employees, whichever is greater, hired by each contractor may be core employees. With the exception of the core employees, all the employees shall be hiring hall referrals by the appropriate signatory unions in accordance with the provisions of the applicable local collective bargaining agreements.

*Id.*, article VI, section 9 (attached as Exhibit 1). This provision appears to allow non-union contractors—as well as union and non-union businesses owned by minorities and women—to use their "core employees" for a small subset of the available jobs, so long as they fill the remaining slots with referrals from the union hiring halls.

23.   Article VI, section 8 of the borough's project labor agreement contains a "non-discrimination" provision stating that "[t]he employees covered by this agreement will not be required to join a union or to pay dues or agency fees as a condition of being employed, or remaining employed on the Project." *Id.*, article VI, section 8 (attached as Exhibit 1). But this "non-discrimination" provision is disingenuous. The

requirement that contractors and subcontractors hire their employees from the unions' job-referral systems compels workers to join and pay those unions as a condition of performing any onsite construction work for the borough, because the unions will not refer non-members through their hiring halls.

24.   Finally, the borough's project labor agreement requires contractors and subcontractors to contribute to that union's pension and health-care funds. *See id.*, article XIII, section 2.

## FACTS RELATED TO STANDING

25.   Plaintiff Associated Builders & Contractors of Western Pennsylvania (ABC) is a membership organization of contractors who operate in western Pennsylvania. Almost all of ABC's members are non-union.

26.   The employees of the non-union ABC contractors have exercised their right not to unionize—a right that is protected by the First Amendment and the National Labor Relations Act.

27.   ABC has associational standing to seek declaratory and injunctive relief against the enforcement of the borough's project labor agreement.

28.   To establish associational standing, an entity must show that: "(a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Hunt v. Washington State Apple Advert. Comm'n*, 432 U.S. 333, 343 (1977).

29.   The non-union members of ABC would have standing to challenge the borough's project labor agreement if they sued as individuals, because the borough's project labor agreement prohibits the non-union members of ABC from working on the borough's construction projects unless they: (1) recognize a union that belongs

to the Pittsburgh Regional Building Trades Council as the exclusive representative of their employees—even though their employees have exercised their constitutional and statutory rights to decline union representation; (2) hire employees from a union's job-referral system rather than use their own employees to perform work on borough's projects; and (3) contribute to that union's pension and health-care funds. This inflicts injury in fact, and this injury will be remedied by an injunction against the continued enforcement of the borough's project labor agreement.

30.   Plaintiffs Hampton Mechanical, Lawrence Plumbing, and R.A. Glancy & Sons—each of whom is a member of ABC—would have individual standing to seek declaratory and injunctive relief against the enforcement of the borough's project labor agreement for the same reason. Each of these contractor plaintiffs is likely to apply for onsite construction work from Plum Borough in the reasonably foreseeable future, and each of them is able and ready to apply for that work.

31.   The interests that ABC seeks to protect in the litigation are germane to the organization's purpose. As ABC explains on its website: "Each ABC member firm, regardless of its size or specialty, shares one thing in common: a steadfast commitment to the free enterprise system and the Merit Shop philosophy. This philosophy maintains that the construction process operates best when guided by the principle that the lowest responsible bidder should be awarded the contract." *See* http://www.abcwpa.org (last visited on December 12, 2020).

32.   Neither the claims asserted by ABC nor the relief requested in this litigation requires the participation of the organizations' individual members.

33.   Plaintiffs Hampton Mechanical, Lawrence Plumbing, and R.A. Glancy & Sons are non-union contractors that operate in Western Pennsylvania. Because their employees have exercised their constitutional right to decline union membership, each of these contractor plaintiffs is ineligible to work on the borough's construction projects unless it: (1) recognizes a union that belongs to the Pittsburgh Regional Building

Trades Council as the exclusive representative of its employees—even though its employees have exercised their constitutional and statutory rights to decline union representation; (2) hire employees from the a union's job-referral systems rather than use its own employees to perform work on borough's projects; and (3) contribute to that union's pension and health-care funds. This inflicts injury in fact. This injury is caused by the defendants' enforcement of the borough's project labor agreement with the Pittsburgh Regional Building Trades Council, and it will be redressed by declaratory and injunctive relief that prevents the defendants from enforcing the PLA.

34.   Plaintiffs Hampton Mechanical, Lawrence Plumbing, and R.A. Glancy & Sons are likely to apply for onsite construction work from Plum Borough in the reasonably foreseeable future, and each of them is able and ready to apply for that work. They therefore have standing to seek declaratory and injunctive relief against the enforcement of the borough's project labor agreement, both on behalf of themselves and on behalf of the class that they seek to represent.

35.   Plaintiffs Hampton Mechanical, Lawrence Plumbing, and R.A. Glancy & Sons have also been prevented from obtaining past onsite construction work from Plum Borough on account of the borough's project labor agreement. They therefore have standing to seek damages for these past injuries, both on behalf of themselves and on behalf of the class that they seek to represent.

36.   Plaintiff Anthony Scarpine is an employee of Hampton Mechanical, and plaintiff Robert L. Casteel is an employee of R.A. Glancy & Sons. The borough's project labor agreement prevents Mr. Scarpine and Mr. Casteel from working on borough construction projects because they have exercised their constitutional and statutory right to decline union membership, and it compels them to obtain employment through the unions' hiring halls if they want to perform any onsite construction work. This inflicts injury in fact. This injury is caused by the defendants' enforcement of the borough's project labor agreement with the Pittsburgh Regional Building Trades

Council, and it will be redressed by declaratory and injunctive relief that prevents the defendants from enforcing the PLA. Mr. Scarpine and Mr. Casteel therefore have standing to seek declaratory and injunctive relief against the enforcement of the borough's project labor agreement, both on behalf of themselves and on behalf of the class that they seek to represent.

37. Mr. Scarpine and Mr. Casteel have also been prevented from obtaining past onsite construction work from Plum Borough on account of the borough's project labor agreement. They therefore have standing to seek damages for these past injuries, both on behalf of themselves and on behalf of the class that they seek to represent.

38. Plaintiffs Anthony Scarpine and Robert L. Casteel are residents and taxpayers of Plum Borough, and they have standing as taxpayers to challenge the borough's violation of Pennsylvania's competitive-bidding laws and other constitutional violations that arise from the borough's project labor agreement. *See Frothingham v. Mellon*, 262 U.S. 447, 486–87 (1923) ("[R]esident taxpayers may sue to enjoin an illegal use of the moneys of a municipal corporation."). The borough's enforcement of its project labor agreement with the Pittsburgh Regional Building Trades Council inflicts injury in fact on county and state taxpayers by awarding projects to someone other than the lowest responsible bidder, restraining competition among the borough's contractors and subcontractors, deterring non-union contractors and others from bidding on the borough's onsite construction work, and increasing the costs of the borough's construction projects by more than a de minimis amount of tax revenue. This injury is caused by the defendants' enforcement of the borough's project labor agreement with the Pittsburgh Regional Building Trades Council, and it will be redressed by declaratory and injunctive relief that prevents the defendants from enforcing the borough's project labor agreement.

## CLAIM FOR RELIEF NO. 1:
## VIOLATION OF THE FIRST AND FOURTEENTH AMENDMENTS

39.   Both public and private employees have a constitutional right to decide whether they will join or associate with a union. *See Roberts v. U.S. Jaycees*, 468 U.S. 609, 623 (1984) ("Freedom of association therefore plainly presupposes a freedom not to associate." (citing *Abood v. Detroit Board of Education*, 431 U.S. 209, 234–35 (1977)); *Pattern Makers' League of N. Am., AFL-CIO v. N.L.R.B.*, 473 U.S. 95, 106 (1985) ("Full union membership thus no longer can be a requirement of employment.").

40.   The Constitution also forbids a public employer to require its employees to join or financially support a union as a condition of employment. *See Janus v. American Federation of State, County, and Municipal Employees, Council 31*, 138 S. Ct. 2448 (2018).

41.   A public employer cannot evade the holdings of *Abood* and *Janus* by contracting out its work and then allowing that work to be performed only by employees hired through a union's job-referral system.

42.   Nor can the borough require the employees of contractors to relinquish their First Amendment rights as a condition of working on the borough's construction projects. *See Board of County Commissioners, Wabaunsee County, Kansas v. Umbehr*, 518 U.S. 668, 674 (1996) ("The government 'may not deny a benefit to a person on a basis that infringes his constitutionally protected . . . freedom of speech' even if he has no entitlement to that benefit" (quoting *Perry v. Sindermann,* 408 U.S. 593, 597 (1972))."

43.   The borough is violating the First and Fourteenth Amendments by requiring its contractors to hire their employees through the job-referral systems operated by unions affiliated with the Pittsburgh Regional Building Trades Council.

44.   The court should declare that the borough's project labor agreement violates the First and Fourteenth Amendments, and it should enjoin the defendants from enforcing it.

45.   The court should also award damages to plaintiffs Hampton Mechanical, Lawrence Plumbing, R.A. Glancy & Sons, Robert L. Casteel, Anthony Scarpine, and their fellow class members under 42 U.S.C. § 1983.

46.   The plaintiffs assert this claim under the causes of action established in 42 U.S.C. § 1983, *Ex parte Young*, 209 U.S. 123 (1908), and the Declaratory Judgment Act, 28 U.S.C. § 2201.

## CLAIM FOR RELIEF NO. 2:
## VIOLATION OF THE NATIONAL LABOR RELATIONS ACT

47.   29 U.S.C. § 157 gives employees the right to decide whether they want union representation. *See N.L.R.B. v. J. Weingarten, Inc.*, 420 U.S. 251, 256–57 (1975) ("An employee's right to union representation upon request is based on Section 7 of the Act which guarantees the right of employees to act in concert for 'mutual aid and protection.'"); *N.L.R.B. v. Granite State Joint Bd., Textile Workers Union of America, Local 1029, AFL-CIO*, 409 U.S. 213, 216 (1972) ("Under § 7 of the Act the employees have 'the right to refrain from any or all' concerted activities relating to collective bargaining or mutual aid and protection, as well as the right to join a union and participate in those concerted activities.").

48.   Plaintiff Anthony Scarpine and his fellow employees at Hampton Mechanical have exercised their right to decline to union representation—a right protected by section 7 of the National Labor Relations Act.

49.   Plaintiff Robert L. Casteel and his fellow employees at R.A. Glancy & Sons have likewise exercised their right to decline to union representation—a right protected by section 7 of the National Labor Relations Act.

50.   The borough's project labor agreement violates the National Labor Relations Act because it prevents Mr. Scarpine and Mr. Casteel from performing on-site construction work for the borough because of their refusal to join a union affiliated with the Pittsburgh Regional Building Trades Council.

51.   The borough's project labor agreement also violates the National Labor Relations Act by forcing borough contractors to recognize a union that belongs to the Pittsburgh Regional Building Trades Council as the representative of their employees—even if their employees have chosen to decline union representation or have chosen a different union to represent them.

52.   The borough's project labor agreement violates the National Labor Relations Act for yet another reason: It prevents employees from working on the borough's construction projects unless they are hired through the job-referral systems operated by unions affiliated with the Pittsburgh Regional Building Trades Council. This requires employees who wish to work on a borough construction project to become union members, because the unions will not refer nonmembers through their hiring halls. This violates 29 U.S.C. § 158(a)(3), which abolished the compulsory union shop. *See Pattern Makers' League of N. Am., AFL-CIO v. N.L.R.B.*, 473 U.S. 95, 106 (1985) ("Section 8(a)(3) of [the Taft–Hartley] Act effectively eliminated compulsory union membership by outlawing the closed shop. The union security agreements permitted by § 8(a)(3) require employees to pay dues, but an employee cannot be discharged for failing to abide by union rules or policies with which he disagrees. Full union membership thus no longer can be a requirement of employment.").

53.   The court should therefore declare that the borough's project labor agreement violates the National Labor Relations Act, and it should enjoin the defendants from enforcing it.

54.   The National Labor Relations Act establishes federal "rights" enforceable under 42 U.S.C. § 1983. *See Golden State Transit Corp. v. City of Los Angeles*, 493 U.S. 103, 109 (1989).

55.   The plaintiffs assert this claim under the causes of action established in 42 U.S.C. § 1983, *Ex parte Young*, 209 U.S. 123 (1908), and the Declaratory Judgment Act, 28 U.S.C. § 2201.

## CLAIM FOR RELIEF NO. 3:
## THE PROJECT LABOR AGREEMENT RESTRAINS COMPETITION IN VIOLATION OF THE ANTITRUST LAWS

56.   The federal antitrust laws prohibit contracts that restrain competition. *See, e.g.*, 15 U.S.C. §§ 1–2.

57.   The project labor agreement between the borough and the Pittsburgh Regional Building Trades Council restrains competition by disqualifying contractors and subcontractors from working on the borough's construction projects unless they: (1) agree to obtain their employees for the borough's projects through the job-referral systems operated by unions affiliated with the Pittsburgh Regional Building Trades Council; (2) agree to recognize a union affiliated with the Pittsburgh Regional Building Trades Council as the exclusive representative of those employees; and (3) agree to contribute to that union's pension and health-care funds.

58.   The project labor agreement between the borough and the Building Trades Council also restrains competition by disqualifying individual laborers from working on the borough's construction projects unless they obtain a job referral from a union affiliated with the Pittsburgh Regional Building Trades Council. The only exception to this requirement is for the "core employees" described in Article VI, section 9 of the PLA.

59.   The labor exemption to the federal antitrust laws is inapplicable to the project labor agreement between the borough and the Building Trades Council. *See Connell Construction Co. v. Plumbers & Steamfitters Local No. 100*, 421 U.S. 616, 622–23 (1975) ("Labor policy clearly does not require, however, that a union have freedom to impose direct restraints on competition among those who employ its members. . . . [T]he nonstatutory [labor] exemption offers no similar protection when a union and a nonlabor party agree to restrain competition in a business market.").

60.   The court should therefore declare that the borough's project labor agreement violates the federal antitrust laws, and it should enjoin the defendants from enforcing it.

61.   The court should also award treble damages to plaintiffs Hampton Mechanical, Lawrence Plumbing, R.A. Glancy & Sons, Robert L. Casteel, Anthony Scarpine, and their fellow class members under 15 U.S.C. § 15.

62.   The plaintiffs assert this claim under the causes of action established in 42 U.S.C. § 1983, *Ex parte Young*, 209 U.S. 123 (1908), the Declaratory Judgment Act, 28 U.S.C. § 2201, and the federal antitrust laws, 15 U.S.C. §§ 15, 26.

## CLAIM FOR RELIEF NO. 4:
## VIOLATION OF STATE COMPETITIVE-BIDDING LAWS

63.   Section 3911(a) of the Commonwealth Procurement Code (Procurement Code) requires that in any "contract to be entered into by a government agency through competitive sealed bidding, the contract shall be awarded to the lowest responsible and responsive bidder within 60 days of the bid opening, or all bids shall be rejected except as otherwise provided in this section." 62 Pa. Cons. Stat. § 3911(a).

64.   Article III, Section 22 of the Pennsylvania Constitution also mandates competitive bidding and states that the General Assembly "shall maintain by law a system of competitive bidding under which all purchases of materials, printing, supplies or other personal property used by the government of this Commonwealth shall so far

as practicable be made." The Pennsylvania Commonwealth Court has held that Article III, section 22 of the Pennsylvania Constitution applies to services and construction projects. *See Allan Myers, L.P. v. Dep't of Transp.*, 202 A.3d 205, 211 (Pa. Cmwlth. 2019).

65.    These competitive-bidding requirements "guard against favoritism, improvidence, extravagance, fraud and corruption in the awarding of municipal contracts . . . and are enacted for the benefit of property holders and taxpayers, and not for the benefit or enrichment of bidders." *Yohe v. City of Lower Burrell*, 208 A.2d 847, 850 (Pa. 1965).

66.    The intent of competitive-bidding statutes is "to 'close, as far as possible, every avenue to favoritism and fraud in its varied forms.' " *Premier Comp Solutions, LLC v. Department of General Services*, 949 A.2d 381, 382 n.1 (Pa. Cmwlth. 2008) (quoting *Louchheim v. Philadelphia*, 66 A. 1121, 1122 (Pa. 1907)).

67.    Bidders for a public contract must be "on an equal footing" and enjoy the same opportunity for open and fair competition. *See Philadelphia Warehousing and Cold Storage v. Hallowell*, 490 A.2d 955, 957 (Pa. Cmwlth. 1985).

68.    When there is no common standard on which bids are based, "[t]he integrity of the competitive bidding process is violated and the purpose of competitive bidding is frustrated." *Allan Myers, L.P. v. Dep't of Transp.*, 202 A.3d 205 (Pa. Cmwlth. 2019).

69.    Thus, when the actual "procedures followed emasculate the benefits of [competitive] bidding, judicial intervention is proper." *Id.* (quoting *Ezy Parks v. Larson*, 454 A.2d 928, 932 (Pa. 1982)); *see also Conduit and Foundation Corporation v. City of Philadelphia*, 401 A.2d 376, 379 (Pa. Cmwlth. 1979) ("[T]he courts will not condone a situation that reveals a clear potential to become a means of favoritism, regardless of the fact that the . . . officials may have acted in good faith in the particular case.")).

70.   The borough is violating state competitive-bidding laws because its project labor agreement discriminates against non-union contractors, as well as contractors whose employees are represented by a union that does not belong to the Pittsburgh Regional Building Trades Council. This confers an unlawful favoritism upon contractors whose employees have joined a union belonging to the Pittsburgh Regional Building Trades Council. Contractors that already maintain collective-bargaining agreements with the city-approved unions will be able to use their current workforce and their current collective-bargaining agreement, while the contractor plaintiffs would be forced to hire new employees through the union hiring hall.

71.   The borough's project labor agreement does not prescribe common standards for all bidders, and all contractors bidding on the borough's public-works projects are not on an equal footing. The borough's project labor agreement violates the integrity of the competitive-bidding process.

72.   The court should declare that the borough's project labor agreement violates state competitive-bidding laws, and it should enjoin the defendants from enforcing it.

73.   The plaintiffs assert this claim under the supplemental-jurisdiction statute, 28 U.S.C. § 1367, and the Declaratory Judgment Act, 28 U.S.C. § 2201.

### CLASS ACTION STATEMENT—CONTRACTOR CLASS

74.   Plaintiffs Hampton Mechanical, Lawrence Plumbing, and R.A. Glancy & Sons sue on behalf of a class of contractors under Fed. R. Civ. P. 23(b)(1)(A), (b)(1)(B), and (b)(3). This class includes all contractors who: (a) are non-union or who maintain collective-bargaining agreements with unions who are not members of the Pittsburgh Regional Building Trades Council; and (b) would have applied, or would be likely to apply in the reasonably foreseeable future, for onsite construction

work from Plum Borough in the absence of the PLA. The class includes every con-
tractor who has ever fallen within this definition, and it includes anyone who comes
within the class definition at any time before the conclusion of this action.

75.   The approximate size of this class is between 50 to 70 contractors.

76.   The number of individual contractors in the class makes joinder of the indi-
vidual class members impractical.

77.   There are numerous questions of law common to each class member. These
common questions of law include:

- Whether the project labor agreement between Plum Borough
  and the Pittsburgh Regional Building Trades Council violates
  the First and Fourteenth Amendments;

- Whether the project labor agreement between Plum Borough
  and the Pittsburgh Regional Building Trades Council violates
  the National Labor Relations Act;

- Whether the project labor agreement between Plum Borough
  and the Pittsburgh Regional Building Trades Council violates
  the federal antitrust laws;

- Whether the project labor agreement between Plum Borough
  and the Pittsburgh Regional Building Trades Council violates
  the state competitive-bidding laws.

78.   The contractor plaintiffs' claims are typical of other class members, as each
of them is being excluded from working on Plum Borough's construction projects
with their own employees because their employees have chosen not to join or affiliate
with unions belonging to the Pittsburgh Regional Building Trades Council.

79.   Each of the contractor plaintiffs adequately represents the interests of their
fellow class members, and they have no interests antagonistic to the class. The con-
tractor plaintiffs seek to enjoin the enforcement of the project labor agreement and
recover damages on behalf of contractors who were excluded from working on Plum

Borough's construction projects with their own employees—a goal shared by all members of the class.

80.   A class action can be maintained under Rule 23(b)(1)(A) because separate actions by class members could risk inconsistent adjudications on the underlying legal issues.

81.   A class action can be maintained under Rule 23(b)(1)(B) because an adjudication determining the legality of the borough's project labor agreement will, as a practical matter, be dispositive of the interests of all class members.

82.   A class action can be maintained under Rule 23(b)(3) because the common questions of law and fact identified in the complaint predominate over any questions affecting only individual class members. A class action is superior to other available methods for the fair and efficient adjudication of the controversy because, among other things, all class members are subjected to the same violations of their rights under federal and state law, but the amount of money involved in each individual's claim would make it burdensome for class members to maintain separate actions.

## CLASS ACTION STATEMENT—EMPLOYEE CLASS

83.   Plaintiffs Anthony Scarpine and Robert L. Casteel sue on behalf of a class of employees under Fed. R. Civ. P. 23(b)(1)(A), (b)(1)(B), and (b)(3). This class includes all employees who: (a) are non-union or belong to unions who are not members of the Pittsburgh Regional Building Trades Council; and (b) would have sought, or would be likely to seek in the reasonably foreseeable future, onsite construction work from Plum Borough in the absence of the PLA. The class includes every employee who has ever fallen within this definition, and it includes anyone who comes within the class definition at any time before the conclusion of this action.

84.   The approximate size of this class is between 500 to 1,000 members.

85. The number of individual employees in the class makes joinder of the individual class members impractical.

86. There are numerous questions of law common to each class member. These common questions of law include:

- Whether the project labor agreement between Plum Borough and the Pittsburgh Regional Building Trades Council violates the First and Fourteenth Amendments;

- Whether the project labor agreement between Plum Borough and the Pittsburgh Regional Building Trades Council violates the National Labor Relations Act;

- Whether the project labor agreement between Plum Borough and the Pittsburgh Regional Building Trades Council violates the federal antitrust laws;

- Whether the project labor agreement between Plum Borough and the Pittsburgh Regional Building Trades Council violates the state competitive-bidding laws.

87. Mr. Scarpine and Mr. Casteel's claims are typical of other class members, as each of them is being excluded from working on Plum Borough's construction projects because they have chosen not to join or affiliate with unions belonging to the Pittsburgh Regional Building Trades Council.

88. Mr. Scarpine and Mr. Casteel adequately represent the interests of their fellow class members, and they have no interests antagonistic to the class. The employee plaintiffs seek to enjoin the enforcement of the project labor agreement and recover damages on behalf of employees who were excluded from working on Plum Borough's construction projects—a goal shared by all members of the class.

89. A class action can be maintained under Rule 23(b)(1)(A) because separate actions by class members could risk inconsistent adjudications on the underlying legal issues.

90.   A class action can be maintained under Rule 23(b)(1)(B) because an adjudication determining the legality of the borough's project labor agreement will, as a practical matter, be dispositive of the interests of all class members.

91.   A class action can be maintained under Rule 23(b)(3) because the common questions of law and fact identified in the complaint predominate over any questions affecting only individual class members. A class action is superior to other available methods for the fair and efficient adjudication of the controversy because, among other things, all class members are subjected to the same violations of their rights under federal and state law, but the amount of money involved in each individual's claim would make it burdensome for class members to maintain separate actions.

## DEMAND FOR RELIEF

92.   The plaintiffs respectfully request that the court:

    a.   certify the classes described in paragraphs 74–83.

    b.   declare that the defendants are violating the plaintiffs' constitutional rights under the First and Fourteenth Amendments by enforcing the borough's project labor agreement;

    c.   declare that the defendants are violating the plaintiffs' federal rights under the National Labor Relations Act by enforcing the borough's project labor agreement;

    d.   declare that the defendants are violating the federal antitrust laws by enforcing the borough's project labor agreement;

    e.   declare that the defendants are violating Pennsylvania's competitive-bidding laws by enforcing the borough's project labor agreement;

    f.   issue a preliminary and permanent injunction that prevents the defendants from enforcing the borough's project labor agreement;

g.    award nominal and compensatory damages to plaintiffs Hampton Mechanical, Lawrence Plumbing, R.A. Glancy & Sons, Robert L. Casteel, Anthony Scarpine, and their fellow class members, including treble damages under 15 U.S.C. § 15;

h.    award costs and attorneys' fees under 42 U.S.C. § 1988;

i.    grant other and further relief that the Court may deem just, proper, or equitable.

Respectfully submitted.

 /s/ Jonathan F. Mitchell 

WALTER S. ZIMOLONG
Pennsylvania Bar No. 89151
Zimolong LLC
P.O. Box 552
Villanova, PA 19085
(215) 665-0842 (phone)
wally@zimolonglaw.com

THOMAS E. WEIERS JR.
Pennsylvania Bar No. 43715
Thomas E. Weiers Jr., Esq.
2000 Georgetowne Drive, Suite 100
Sewickley, Pennsylvania 15143
(724) 719-6360 (phone)
(724) 935-3233 (fax)
tom.weiersesq@gmail.com

Dated: December 12, 2020

JONATHAN F. MITCHELL
Pennsylvania Bar No. 91505
Mitchell Law PLLC
111 Congress Avenue, Suite 400
Austin, Texas 78701
(512) 686-3940 (phone)
(512) 686-3941 (fax)
jonathan@mitchell.law

*Counsel for Plaintiffs
and the Proposed Classes*